## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CERTAIN UNDERWRITERS AT
LLOYDS,

      Plaintiffs,

v.

CSX TRANSPORTATION, INC.,
EVANSVILLE WESTERN
RAILWAY, INC., and PADUCAH &
LOUISVILLE RAILWAY, INC.,

      Defendants.

Case No. 20-cv-0795-SPM

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Dismiss Counts II through V of Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants, CSX Transportation, Inc. ("CSX") and Evansville Western Railway, Inc. ("EVWR"). For the reasons set forth below, the Court denies the motion to dismiss in its entirety.

## PROCEDURAL BACKGROUND

### 1. Western District of North Carolina

On February 14, 2019, plaintiff, Certain Underwriters at Lloyds ("Lloyds") filed its initial complaint against CSX and EVWR in the United States District Court for the Western District of North Carolina, *to wit:* 3:19-cv-00079 (Doc. 1). The complaint was an action to recover for the loss of four locomotives that were destroyed during a derailment in or near Lilesville, Anson County, North Carolina on

September 16, 2018. *Id.* The locomotives had a combined net value of at least $6,040,364.00 (*Id.*).

On April 11, 2019. CSX answered count I, but also filed a motion to dismiss counts II – VI (Docs. 27-29). On that same date, EVWR filed a motion to dismiss for improper venue and personal jurisdiction along with supporting memorandum of law (Docs. 30-31).

On January 6, 2020, Magistrate Judge David Keesler filed a Memorandum and Recommendation regarding the outstanding motions (Doc. 48). At the time, the Court found that EVWR was the undisputed "originating carrier", and as such, recommended transfer to the Southern District of Illinois under 49 U.S.C. § 11706(d)(2)(A)(i). Although venue as to CSX was proper in the Western District of North Carolina, CSX moved to transfer this matter to the Southern District of Illinois pursuant to § 1404(a), and the Court found the argument persuasive, and consistent with the Carmack Amendment and the interests of justice (*Id.*).

On February 20, 2020, Lloyds filed an objection to the Memorandum and Recommendations on February 21, 2020 (Doc. 49); Notwithstanding the foregoing, on August 18, 2020, United States District Judge Robert J. Conrad, Jr., of the Western District of North Carolina, overruled the objections and adopted the Memorandum and Recommendation by entering an Order that ultimately transferred this case to the United States District Court for the Southern District of Illinois. (Doc. 58).

2. **Southern District of Illinois**

On August 19, 2020, this matter was transferred in from the District of North

Carolina Western. (Doc. 59). This case was originally assigned to the Honorable Judge John Gilbert, who assigned Track C and scheduled the final pretrial conference for February 2, 2022 and jury trial on February 14, 2022. (Doc. 75). After reassignment to this Court, a telephonic scheduling conference was held on October 27, 2020. (Doc. 79). At that time, a scheduling order was entered, and Lloyds was granted leave to file Amended Complaint. (Docs. 82, 83).

On November 11, 2020, Lloyds filed an amended complaint with this Court, going from six counts to five and adding Paducah & Louisville Railway, Inc. as a party defendant. (Doc. 84). On November 24, 2020, CSX and EVWR answered count I of the amended complaint. (Docs. 91, 92). On that same date, CSX and EVWR also filed a joint motion to dismiss counts II through V of amended complaint, along with supporting memorandum of law, which Lloyds opposed. (Docs. 93-94, 114). On January 6, 2021, oral argument was held via Zoom with respect to this motion. (Doc. 119).

On December 22, 2020, PAL was served with the amended complaint, which had an answer date of January 12, 2021. (Doc. 118). On January 12, 2021, PAL filed a motion to dismiss amended complaint for lack of jurisdiction, along with memorandum of law in support of motion. (Docs. 122-123).

On January 25, 2021, this Court granted the motion to dismiss filed by CSX and EVWR[1]; however, at that time, Lloyds was also granted thirty days to file a

---

[1]In the Order dismissing the amended complaint, the Court noted that paragraph 61, which stated "Defendants are rail carriers within the meaning of the Carmack Amendment (and also as defined in 49 U.S.C. § 10205(5))" was reasserted and realleged in all five counts, including those claiming common carrier liability, negligence, gross negligence, willful or wanton conduct; and, Conversion. The Court's ruling on this motion heavily relied upon the procedural deficiencies in that the realleged and

second amended complaint (Doc. 125). Although PAL had a motion to dismiss amended complaint pending, it was deemed moot with the dismissal and granting leave to file second amended complaint.

On February 16, 2021, Lloyds filed its second amended complaint, with counts I – V asserted against CSX, EVWR, and PAL, and count VI only asserted against PAL (Doc. 131). The counts were broken down as follows: (I) Liability pursuant to the Carmack Amendment (49 U.S.C. § 11706 (a)); (II) Common carrier liability for violations of the federal bill of lading act (non-delivery under 49 U.S.C. § 80110); (III) Common carrier liability for violations of the federal bill of lading act (misdelivery under 49 U.S.C. § 80111); (IV) Negligence, gross negligence, willful or wanton conduct; (V) Conversion; and (6) Contract to deliver goods (*Id.*).

On March 3, 2021, PAL filed a motion to dismiss for lack of jurisdiction and for failure to state a claim, along with supporting memorandum of law (Docs. 139-140). On that same date, CSX and EVWR answered count I of the second amended complaint (Docs. 141-142). CSW and EVWR simultaneously filed a motion to dismiss counts II through V pursuant to Rule 12(b)(6) along with supporting memorandum of law counts II through V (Docs. 136-137). On April 5, 2021, Lloyds filed its response in opposition to the motions to dismiss filed by CSX and EVWR (Doc. 160). On May 20, 2021, oral argument was held on all pending motions.

---

reasserted paragraph 61 was contradictory to the later counts.

## FACTUAL BACKGROUND

Prior to September 2018, Lloyds had an insurance relationship with National Railway Equipment Co. ("NRE") and are subrogees of NRE. (Doc. 131). This is an action to recover for the loss of four Locomotives, identified as NREX 122-125, with a combined value of at least $6,040.364.00. (*Id.*). The locomotives were to be delivered to a North Carolina entity at the Port of Wilmington; however, Hurricane Florence struck the area and the locomotives never made it to their final destination (*Id.*).

NRE, an Illinois corporation with its principal place of business in Mt. Vernon, Illinois was the shipper, while EVWR was "originating carrier" and CSX was the "delivering carrier" as the terms are defined in the Carmack Amendment (*Id.*). The terms of the shipment were memorialized in shipping instructions and EDI communications[2] (*Id.*).

On September 7, 2018, the shipment commenced in the Southern District of Illinois, but was not due to arrive in Wilmington, North Carolina for several weeks (*Id.*). CSX conducted a pre-shipment inspection of the locomotives and issued clearance for the shipment. (*Id.*). On September 16, 2018, the four locomotives derailed in or near Lilesville, Anson County, North Carolina (*Id.*). Prior to the derailment, the surrounding areas were under a flood watch and the Port of Wilmington was closed due to the weather (*Id.*).

---

[2] These documents are attached to the Second Amended Complaint as Exhibit 6, and constitute the Bills of Lading data.

## LAW

### Rule 12(b)(6)

The Court of Appeals for the Seventh Circuit has held that courts must approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), cert. denied, 558 U.S. 1148 (2010) (*quoting Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Under this standard, a plaintiff who seeks to survive a motion to dismiss must "plead some facts that suggest a right of relief that is beyond speculative level." *In re marchFIRST Inc.,* 589 F.3d 901 (7th Cir. 2009).

There are two hurdles or tenets that must be overcome in order to state a cause of action under Rule 12(b)(6). *E.E.O.C. v. Concentra Health Servs, Inc.,* 496 F.3d 773 (7th Cir. 2007). First, the complaint must describe the claim in enough detail to give fair notice of the claim and the grounds for it; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Second, the complaint must state a claim "plausible on its face'. *Id.* at 544, 579. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). "Plausibility is not a synonym for probability in this context but asks for more than a sheer possibility that a defendant has acted unlawfully." *West Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670 (7th Cir. 2016).

## ANALYSIS

At issue are counts II through V of Lloyd's Second Amended Complaint (Doc. 131). The Federal Rules reject the approach that pleading is a game of skill in which one misstep may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, citing Conley v. Gibson,* 355 U.S. 41 (1957).   To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Conley,* 355 U.S. 41, 47; Fed.R.Civ.P. 8(a)(2).

Generally, district courts may not consider material outside of the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civile Procedure. *McCready v. eBay*, 453 F.3d 882, 891 (7th Cir. 2006). There is a narrow exception to this rule; however, that permits documents attached to the motion to dismiss to be considered part of the pleadings if they are referenced in the plaintiff's complaint and are central to the plaintiff's claim. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

Federal pleading requires notice, not fact pleading. According to Rule 8 of the Federal Rules of Civil Procedure, a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief. FED. R. CIV. P. 8.

## I.      Counts II – III

Counts II and III are predicated upon alternate theories of liability for common carriers under the Federal Bill of Lading Act, *to wit*: 49 U.S.C. § 80110 (non-delivery) and 49 U.S.C. § 80111 (misdelivery). A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage. Kirby v. 543 U.S. 18-19 (20); *Kawasaki Kisen Kaisha, Ltd. v. Regal-Beloit Corp.,* 561 U.S. 89, 94 (2010). Admittedly, this shipment did not deal with maritime law so should be controlled by Carmack and not COGSA. However, even under Carmack, rail carriers are required to issue a bill of lading.   *Kawasaki Kisen Kaisha, Ltd.,* 561 U.S. at 100.

At this stage, plaintiff has pled a cause of action that is plausible. Lloyds has set forth the grounds for jurisdiction, a statement showing that they are entitled to relief, and an alternative demand for relief.

## II.      Count IV

In Count IV of the second amended complaint, Lloyds asserts liability for negligence, gross negligence or willful and wanton conduct (Doc. 131).

### a.  Negligence

The essential elements of a cause of action based on common law negligence are: (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and, (3) an injury proximately caused by the breach. *Ward v. K Mart, Corp.,* 554 N.E.2d 223 (Ill. 1990); *Kirk v. Michael Reese Hospital & Medical Center*, 513 N.E.2d 387 (Ill. 1987). Where there is no duty, there can be no liability. *Swearingen v. Momentive Specialty Chemicals, Inc.*, 662 F.3d 969 (7th Cir. 2011); *Iseberg v. Gross*,

879 N.E.2d 278 (Ill. 2007).

### b.  Gross Negligence

Gross negligence "differs from ordinary negligence only in degree, and not in kind." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 34, at 212 (5th ed. 1984).

### c.  Willful and Wanton Conduct

There is no separate, independent tort of willful and wanton conduct; rather willful and wanton conduct is regarded as an aggravated form of negligence. *Krywin v. Chicago Transit Authority,* 938 N.E.2d 440 (Ill. 2010). In order to recover damages based on willful and wanton conduct, a plaintiff must first plead and prove the basic elements of a negligence claim. *Id.* 938 N.E.2d 440.

Again, Lloyds has satisfied federal pleading guidelines and has plausibly stated a claim for relief. He has alleged the requisite duty, breach, causation and damages. At this stage, the Court cannot determine whether any and all potential claims and/or liability are preempted by Carmack.

### III.    Count V

Lloyd's last claim for relief against CSX and EVWR is conversion, which is often equated to civil theft, although there are differences. 18 Am. Jur. 2d Conversion §1. Indeed, the tort of conversion is defined as an intentional exercise of dominion and control over personal property or a chattel that so seriously interferes with the right of another to control that property that the tortfeasor may justly be required to pay the other the full value of the property. *Id.* Moreover, to establish a claim for conversion, the following elements must be met: (1) the plaintiff had legal title to the

converted property; (2) the plaintiff either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his or her rights to use and enjoy the property; (4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property. 18 Am. Jur. 2d Conversion §2.

Lloyds is at the pleading stage, not the proving stage. In comparing the necessary elements with Lloyd's second amended complaint, this Court finds that a plausible claim has been plead and that CSX and EVWR have sufficient knowledge to respond to same.

In light of the foregoing, at this time and without the benefit of a fully developed evidentiary record, the Court is not prepared to determine whether Lloyd's will prevail. For now, Lloyds has sufficiently pled multiple causes of action against CSX and EVWR and has plausibly alleged that they are entitled to relief. Because the purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits, any disputed issues may be better suited for disposition on a motion for summary judgment, after the case has been more fully developed.

## CONCLUSION

For the reasons set forth above, the Court DENIES the Motion to Dismiss Counts II through V of Amended Complaint, and CSX and EVWR are directed to file an answer to these counts by September 1, 2021.

**IT IS SO ORDERED.**

**DATED:   August 2, 2021**


                                        **/s/ Stephen P. McGlynn**
                                        **STEPHEN P. McGLYNN**
                                        **U.S. District Judge**