IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CERTAIN UNDERWRITERS AT LLOYDS,**<br><br>   Plaintiffs,<br><br>v.<br><br>**CSX TRANSPORTATION, INC., EVANSVILLE WESTERN RAILWAY, INC., AND PADUCAH & LOUISVILLE RAILWAY, INC.,**<br><br>   Defendants. | Case No. 20-cv-0795-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure filed by defendant Paducah & Louisville Railway, Inc. ("PAL") (Doc. 243). Having been fully informed of the issues presented, this Court GRANTS the Motion for Summary Judgment in its entirety.

### Relevant Factual And Procedural Background

Plaintiff Certain Underwriters at Lloyds ("Lloyds") commenced the present action to recover damages associated with the derailment of a train while under care of defendant CSX Transportation, Inc. ("CSX"). Lloyds sues as a subrogee for National Railway Equipment Company ("NRE") to recover the value associated with the loss of four (4) locomotives. In September 2018, NRE sold these locomotives to a customer in Guinea and arranged rail transport on Evansville Western Railway, Inc. ("EVWR") via a booking website known as PALConnect. Smith Dep.: 14, 28–30. EVWR

transported the locomotives from Mount Vernon, Illinois to Evansville, Indiana, at which point CSX took custody of the locomotives to continue their transport to Wilmington, NC. *Id.* at 41. While in North Carolina on September 16, 2018, the CSX train carrying the locomotives derailed because of water on the tracks from Hurricane Florence. *Id.* at 14, 112.

While not named in Lloyds's initial Complaint (Doc. 1) or its First Amended Complaint (Doc. 84), PAL was added in the Second Amended Complaint filed on February 16, 2021 (Doc. 131). That complaint included six (6) claims for relief including liability under the Carmack Amendment to the Interstate Commerce Act (49 U.S.C. § 11706, "Carmack"), two violations of the Uniform Bills of Lading Act (49 U.S.C. §§ 80110, 80111), negligence and related claims, conversion, and, against PAL, specifically, breach of contract to deliver goods (Doc. 131, ¶¶ 62–95). Defendants CSX, EVWR, and PAL all filed Motions for Summary Judgment (Docs. 239, 242, and 243). Lloyds subsequently filed its own Motion for Summary Judgment and a Response in Opposition to PAL's Motion for Summary Judgment (Docs. 251, 266).

Oral argument was held before the Court on January 18, 2022. At that time, PAL argued that it should not be a party to the case at all, arguing that it was not subject to this Court's personal jurisdiction via established Supreme Court precedent or Illinois's long-arm statute and that, even if it were, it should be excluded from liability as it was neither a party to any of the contracts nor did it provide any services as a rail carrier within Carmack's definition. Hr'g Tr.: 69–78, Jan. 18, 2022. Lloyds contested both arguments, first arguing that personal jurisdiction was proper because

PAL and EVWR were inextricably connected within the same corporate infrastructure and, second, that the use of PALConnect to book freight shipment on EVWR fit the definition of a "service" under § 11706(a) of Carmack. *Id.* at 78–85. For a more extensive description of the factual and procedural background of this case, see Docs. 239, 242, 243, 251, and 266.

## APPLICABLE LAW AND LEGAL STANDARDS

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, no issue remains for trial if "sufficient evidence favoring the nonmoving party exists to permit a jury to return a

verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)). The non-movant cannot simply rely on its pleadings; the non-movant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy and Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994)).

## ANALYSIS

### I. Personal Jurisdiction

In a federal question case under 28 U.S.C. § 1331 or a diversity case under 28 U.S.C. § 1332, a federal court has personal jurisdiction over a defendant if either federal law or state law authorizes service of process against that defendant. *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citing *Omni Cap. Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104–05 (1987)). Depending on the extent of the defendant's contacts, personal jurisdiction may be general or specific. *Id.* at 444.

PAL first argues that it is not subject to this Court's general jurisdiction. For this Court to exercise general jurisdiction, established Supreme Court precedent states that the corporation must have connections that are "continuous and systematic" so that they are "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Daimler AG v.*

*Bauman*, 571 U.S. 117, 138–39 (2014); *BNSF Ry. v. Tyrrell*, ___ U.S. ___, 137 S. Ct. 1549, 1559 (2017). Additionally, the Supreme Court clarified that the "paradigm" forums in which a corporation is deemed to be "at home" are its place of incorporation and its principal place of business. *Goodyear*, 564 U.S. at 924, *Daimler*, 571 U.S. at 137, *BNSF Ry.,* 137 S. Ct. at 1558. PAL is incorporated in Kentucky and has its headquarters in Paducah, Kentucky (Doc. 84, ¶ 5, Doc. 243, p. 7). While PAL operates short-line railroads in Kentucky, it does not have any rail operations in Illinois (Doc. 243, p. 6–7). In order to surmount this barrier, Lloyds relies on its argument that EVWR and PAL are closely linked. This would allow this Court to exercise personal jurisdiction via EVWR's operations in Illinois (Doc. 131, ¶ 12–13). This argument to "pierce the veil" is addressed *infra.*

PAL argues next that it is not subject to this Court's specific jurisdiction via Illinois's long-arm statute (Doc. 243, p. 8). Illinois law provides that jurisdiction may be established within the confines of the Illinois and Federal Constitutions. 735 ILCS 5/2-209 (2016). Specific jurisdiction is proper when a defendant "purposefully directs its activities at the forum state . . . ." *Mobile Anesthesiologists Chi.*, 623 F.3d at 444. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). Once more under established Supreme Court precedent, it is unconstitutional to force a defendant to appear in court unless its actions in that forum state made it "reasonably anticipate being haled into court there." *Mobile Anesthesiologists Chi.*, 623 F.3d at 444 (citing *Burger King*, 471 U.S. at 474). Here, PAL does not have operations in Illinois and does not offer rail services of any kind in Illinois (Doc. 243, p. 6–7). Lloyds also relies

on the connection between PAL and EVWR here to surmount the jurisdictional hurdle (Doc. 131, ¶ 12–13, Doc. 266, p. 20).

Key to both general and specific jurisdiction is the question of whether PAL and EVWR should be considered as a single corporate entity. PAL argues that it and EVWR are separate corporations and that "piercing the corporate veil" is improper absent evidence of insolvency or fraud (Doc. 243, p. 9). Lloyds responds that PAL and EVWR are part of the same corporate family, sharing board members, management teams, and services, and that EVWR is only a "paper barrier" used to confer tax benefits on PAL and to shield it from liability (Doc. 84, ¶¶ 24, 36). *See* Hr'g. Tr.: 79–81.

A two-pronged test is employed to determine whether the corporate veil should be pierced to confer jurisdiction. *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009) (quoting *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388–89 (7th Cir.1994)). First, the plaintiff must demonstrate "unity of ownership and interest" so significant that "the separate personalities" of the corporations cease to exist. *Id.* Second, the plaintiff must show that that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Id. See also Chi. Florsheim Shoe Store Co. v. Cluett, Peabody & Co.*, 826 F.2d 725, 728 (7th Cir. 1987) (stating the same).

PAL and EVWR share directors and officers (Doc. 243, p. 5–6). The Management Agreement between PAL and EVWR providing PALConnect service to EVWR's customers does show the different corporate structures at work here (Doc.

243, p. 8–9). EVWR pays a service fee to PAL for the services provided under this Agreement (Doc. 243, p. 6). There are separate logins for PAL and for EVWR customers on PALConnect (Doc. 243, p. 11). *See* Smith Dep.: 33. Employees of PAL and EVWR wear a different "imaginary hat" when doing business for each corporation but perform similar work for each role (Doc. 181, p. 2–3). While all of this shows the close connection between PAL and EVWR, the question remains whether the corporate veil should be pierced to confer jurisdiction. All of the evidence about the close corporate linkage between PAL and EVWR would seem to meet the first prong of the test. *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009) (quoting *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388–89 (7th Cir.1994)). That being said, the second prong poses an issue on Lloyds's pleaded facts.

The Seventh Circuit has held that sharing a website is not enough to determine that corporate entities were combined absent some other evidence of fraud. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 365 (7th Cir. 2016). Additionally, Lloyds has not introduced any evidence to indicate that EVWR is anything other than an adequately capitalized corporation (Doc. 243, p. 6, 9). Thus, PAL's presence is this action is not required to prevent an unjust outcome, as Lloyds can recover against the other defendants here.

Lloyds argues that it has already met its burden to establish personal jurisdiction (Doc. 266, p. 20) and relies on this Court's denial of PAL's Motion to Dismiss (Doc. 191, p. 5-8). However, Lloyds misunderstands the burden of proof at this stage of the proceeding. At the Motion to Dismiss stage under Rule 12(b)(2), in

determining whether the "prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)). In comparison, this standard is more stringent under Rule 56. As PAL has as set forth the basis for summary judgment, the burden shifts to Lloyds as the nonmoving party to demonstrate that there is a genuine issue of fact that remains to be resolved. *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 556, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). While Lloyds's arguments about the intertwined nature of PAL and EVWR were sufficient to survive PAL's Motion to Dismiss, they are not persuasive at this stage. As Lloyds cannot meet the second prong of the test, it has not pleaded facts showing that this Court should pierce that corporate veil here to confer personal jurisdiction on PAL. *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009) (quoting *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388–89 (7th Cir.1994)).

## II. Services under Carmack

Even if this Court were able to exercise personal jurisdiction, PAL must have provided "services" under the cognizance of Carmack to be liable. 49 U.S.C. § 11706(a). During its oral argument, PAL argued that it was not directly involved with the transportation of the locomotives at issue, stating that its only involvement with the shipment was that NRE booked the shipment on PALConnect. Hr'g Tr.: 75-76. Additionally, PAL is not listed as a party in any of the produced bills of lading. *Id.* at

75. Lloyds argued in response that the use of the website alone met the definition of "services" under Carmack. Hr'g Tr.: 80-81.

While PAL shares its name with that of the website, NRE uses separate login information for the PAL and EVWR railroad portions of the website (Doc. 243, p. 11). *See* Smith Dep: 33, 144. NRE did not use the PAL portion of the site to book shipment. Smith Dep: 144. Thus, the question before the Court is whether use of the PALConnect web service shared between PAL and EVWR adequately qualifies as a "service" under Carmack.

Subsection (a) of § 11706 states that "[a] rail carrier and any other carrier that delivers the property and is providing transportation or *service* . . . are liable to the person entitled to recover . . . ." *Id.* (emphasis added). 49 U.S.C. § 11706(a). Section 10102 of the statute provides the definitions of key terms. 49 U.S.C. § 10102. Subsection (9)(B) defines "services" as being "related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property . . . ." 49 U.S.C. § 10102(9)(B). The plain language of the statute delineates services directly related to the transportation of cargo. It does not include "services" like those Lloyds purports that PAL provided via PALConnect.

The language of § 10102 differs from that in other parts of the statute. While Part A of Subtitle IV governs rail carriers, Part B covers motor carriers, water carriers, brokers, and freight forwarders. 49 U.S.C. § 13102. In Part B, "services" are defined as "services related to that movement, including *arranging for*, receipt,

delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property . . . ." 49 U.S.C § 13102(23)(B) (emphasis added). While this section includes "arranging for" transportation as being within the realm of "services," the statute for rail carriers expressly excludes this language. *See* 49 U.S.C. § 10102(9)(B). This vitiates Lloyds's argument that PALConnect is a "service" in accordance with Carmack. The omission of an "arranging for" provision in § 10101(9)(B) reflects a clear intent by Congress to limit the definition of "services" to those directly related to the rail transport of freight (e.g. refrigeration, icing, ventilation, and similar services).

Additionally, while Part B does cover "brokers," § 13102 defines a "broker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or *arranging for*, transportation by *motor carrier* for compensation." 49 U.S.C. § 13102(2) (emphasis added). Not only is the definition limited to brokers of transportation via motor carrier, but, like the definition of "services," analogous language is not included in § 10102. *See* 49 U.S.C. § 10102. Thus, even if PAL were a broker here, broker liability is neither discussed nor included in the relevant portion of Carmack.

While neither the Supreme Court nor the Seventh Circuit has addressed the interpretation of rail carrier "services" under Carmack, the Second Circuit adopted the narrow definition of services in § 10102. *Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc.*, 547 F.3d 351, 361–62 (2d Cir. 2008). As § 10102 "specifically references

operational functions related to the actual movement or storage of property or passengers," the *Rexroth* court determined that "arranging or booking rail transportation" did not fall within Carmack's "statutory definition of 'transportation.'" *Rexroth*, 547 F.3d at 362.1

If Lloyds's definition of "services" were permitted, it would vastly expand the scope of liability in the rail industry. While Carmack governs the liability of rail carriers vis-à-vis the transportation of goods, Lloyds's construction of the statute would bring PAL within the penumbra of Carmack liability even though it did not move or touch the freight in question, but only happened to share a website and corporate resources with EVWR. This *reductio ad absurdum* cannot reflect Congress's intent and is not adopted by this Court. Based on the plain language of the statute, PAL did not provide "services" under Carmack and, thus, cannot be maintained as a party in the present suit.

## Conclusion

For the reasons set forth above, the Court **GRANTS** defendant PAL's Motion for Summary Judgment (Doc. 243) for lack of subject matter jurisdiction and dearth of services provided under the Carmack Amendment. Accordingly, plaintiff's claims against defendant, Paducah and Louisville Railway, Inc., are **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

---

1 *Rexroth*'s holding involved a categorical exclusion of ocean liners from Carmack liability. 547 F.3d at 362. The Ninth Circuit declined to follow this exception in *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha Ltd.*, 557 F.3d 985 (9th Cir. 2009), *rev'd and remanded*, 561 U.S. 89 (2010). While the Supreme Court's ruling abrogated *Rexroth*'s reasoning in relation to ocean carriers, its analysis of the definition of "services" under Carmack was not affected.

**IT IS SO ORDERED.**

**DATED:** <u>February 11, 2022</u>

<u>/s/ Stephen P. McGlynn</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**