### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CERTAIN UNDERWRITERS AT LLOYDS,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 20-cv-0795-SPM** |
| **CSX TRANSPORTATION, INC., EVANSVILLE WESTERN RAILWAY, INC., and PADUCAH & LOUISVILLE RAILWAY, INC.,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

Pending before the Court are two (2) Motions for Summary Judgment filed by defendants, CSX Transportation, Inc. ("CSX") (Doc. 239) and Evansville Western Railway, Inc. ("EVWR") (Doc. 242), along with a Motion for Summary Judgment filed by plaintiffs, Certain Underwriters at Lloyd's ("Lloyds") (Doc. 251). For the reasons set forth below, the Court GRANTS in part and DENIES in part the respective motions filed by CSX, EVWR, and Lloyds.

### RELEVANT PROCEDURAL HISTORY[1]

On September 17, 2020, this case was assigned Track "C", with the final pretrial conference being scheduled for February 2, 2022 and a jury trial date of February 14, 2022, albeit before the Honorable Judge J. Phil Gilbert in Benton,

---

[1] On February 14, 2019, Lloyds initiated this case by filing its Complaint in the Western District of North Carolina, *to wit:* 3:19-cv-00079 (Doc. 1). On August 19, 2020, this matter was transferred to this district.

Illinois (Doc. 75). On October 8, 2020, this case was reassigned to the Honorable Judge Stephen P. McGlynn in East St. Louis, Illinois (Doc. 78). On October 27, 2020, a telephonic scheduling conference was held and the Court accepted the proposed schedule submitted by the parties, which indicated that discovery was due by October 8, 2021 and dispositive motions were due by October 22, 2021 (Docs. 81 & 82). The Court also confirmed the previous final pretrial and jury settings; however, they were moved from the Benton Courthouse before Judge Gilbert to the East St. Louis Courthouse before Judge McGlynn (*Id*.). At that time, the two defendants in this case were CSX and EVWR.

On November 7, 2020, after obtaining leave of court, Lloyds filed an amended complaint, adding Paducah & Louisville Railway, Inc. as a defendant and modifying the cause of action (Doc. 84). The allegations in the amended complaint contained the following six (5) claims for relief: (1) Carrier liability pursuant to the Carmack Amendment (49 U.S.C. § 11706 (a)); (2) Common carrier liability for violations of the Federal Bill of Lading Act (alternatively, non-delivery under 49 U.S.C. § 80110); (3) Common carrier liability for violations of the Federal Bill of Lading Act (Mis-delivery/conversion under 49 U.S.C. § 80111); (4) Negligence, gross negligence, willful or wanton conduct; and, (5) Conversion (*Id*.).

On November 24, 2020, CSX and EVWR filed answers to Lloyds first claim for relief under the Carmack Amendment, but also filed a joint motion to dismiss the remaining counts, along with supporting memorandum of law (Docs. 91 – 94). CSX and EVWR also moved for a hearing regarding their motion to dismiss, which was ultimately set for January 6, 2021 (Docs. 95 and 102). On December 23, 2020, Lloyds

filed its response in opposition to the joint motion to dismiss (Doc. 114). Between the filing of the motion to dismiss and the hearing, there were numerous filings regarding the status of discovery as well as motions to strike pleadings and affirmative defenses.

On January 6, 2021, a telephone conference was held at which time the motion to dismiss was argued and taken under advisement (Doc. 119). The parties also argued the motion to strike affirmative defenses and motion to stay answering amended complaint while motion to dismiss was pending, and Lloyds asserted objections to discovery delays (*Id*). On January 8, 2021, the Court issued an Order granting defendants seven (7) days to answer the amended complaint, if ordered, following entry of ruling on motion to dismiss; ordering defendants to produce all documents constituting Bills of Lading governing this particular transaction within fourteen (14) days, up to and including January 22, 2021; and, setting this case for status conference on February 22, 2021 (Doc. 121). On January 12, 2021, while the aforementioned motion was under advisement, PAL filed its motion to dismiss and supporting memorandum of law (Docs. 122 and 123). On January 25, 2021, the Court granted the motion to dismiss, but granted Lloyds thirty (30) days, or up to February 24, 2021, to file a second amended complaint (Doc. 125).

On February 16, 2021, Lloyds filed its second amended complaint in the following six (6) claims for relief: (1) Carrier liability pursuant to the Carmack Amendment (49 U.S.C. § 11706 (a)); (2) Common carrier liability for violations of the Common carrier liability for violations of the Federal Bill of Lading Act (Mis-delivery/conversion under 49 U.S.C. § 80111); (4) Negligence, gross negligence, willful

or wanton conduct; (5) Conversion; and (6) Breach of Contract to Deliver Goods (Doc. 131). Counts one through five were asserted against CSX, EVWR and PAL, while count six was brought only against PAL (*Id.*). Motions to dismiss ensued and this matter was set for hearing on May 20, 2021 (Doc. 165). Additionally, discovery was ongoing pursuant to the previously entered scheduling order and motions and objections to discovery were also set for hearing on May 20, 2021 (*Id.*).

At the May 20, 2021 hearing, this Court addressed the various discovery motions and took the motions to dismiss filed by CSX, EVWR and PAL under advisement (Doc. 168). The Court also ordered PAL to produce Tom Greene for deposition within 21 days, or by June 11, 2021 and set a briefing scheduling for supplementing arguments for and against dismissal (*Id.*). Of note, on June 2, 2021, the Court also reminded the parties that the final pre-trial conference remained scheduled for February 2, 2022 with a jury trial scheduled to commence on February 14, 2022 (Doc. 170).

On August 2, 2021, the Court denied the motions to dismiss filed by CSX, EVWR and PAL (Docs. 190 and 191). The Court also ordered the defendants to answer the second amended complaint by September 1, 2021 (*Id.*). On September 1, 2021, CSX, EVWR and PAL filed their respective answers along with affirmative defenses (Docs. 197 – 199).

On September 15, 2021, counsel filed a joint motion to amend scheduling order (Doc. 226). On that same date, said Motion was granted, pushing the fact discovery deadline to October 29, 2021 and the dispositive motion due date to November 22, 2022 (Doc. 227). However, the parties were again reminded that the pre-trial

conference remained set on February 2, 2022 and the Jury Trial remained scheduled to commence on February 14, 2022 (*Id.*).

November 22, 2021 was the deadline for the filing of dispositive motions. Each party filed their respective motion for summary judgment; however, PAL's motion will not be addressed in this Order (Docs. 239, 242, 243 and 251).

On December 27, 2021, Lloyds filed its responses in opposition to both CSX's and EVWR's motions for summary judgment and attached exhibits (Docs. 259-265). On this same date, CSX and EVWR filed a joint opposition to Lloyds motion (Doc. 269). On January 10, 2022, CSX filed a reply in support of its motion for summary judgment (Doc. 285) and Lloyds filed objections to CSX's response in opposition of its motion (Docs. 286, 287).

On January 18, 2022, oral argument was held regarding the aforementioned motions for summary judgment (Doc. 294). Although many of the arguments were repetitive, each party was given the opportunity to argue their motion as well as respond to the other parties' arguments (*Id.*). Following the hearing, the motions were taken under advisement.

On January 26, 2022, the final pretrial conference scheduled for February 2, 2022 was cancelled and vacated as was the jury trial that was scheduled to commence on February 14, 2022 (Doc. 295). In the continuance Order, the Court noted that the aforementioned motions were under advisement along with six (6) other motions pending regarding potential expert witnesses (*Id.*). Additionally, the Southern District of Illinois moved to mandatory mediation on October 8, 2021, and the

continuance would give the parties the opportunity to comply with Administrative Order 301 (SDIL-AO 301) (*Id.*).

## STATEMENT OF FACTS[2]

In this case, Certain Underwriters at Lloyds, the insurer for National Railway Equipment ("NRE"), is seeking to recover in subrogation for the loss of four locomotives and the associated costs paid as a result of damage incurred following a train derailment that occurred near Lilesville, N.C. (Doc. 131). Following the derailment, Lloyds paid NRE $5,840,360.00[3], and is now seeking to recover said amount as subrogees to NRE[4] (*Id.*).

In September 2018, ("NRE") had four locomotives that needed to be delivered to the Port of Wilmington, N.C.[5] (Doc. 243-1). Jay Smith, Corporate Logistics Director for NRE, arranged for the transportation and waybilled the locomotives on the EVWR portion of PALConnect (*Id.*). Prior to transport, Smith notified CSX that the locomotives were ready and needed inspecting[6] (*Id.*). Once CSX passed the units, the inspector sent the information to CSX in Jacksonville and NRE got the units ready for pick-up by EVWR (*Id.*).

---

[2] In an effort to exclude immaterial and irrelevant facts, this Court has prepared its own Statement of Facts based upon the briefs provided by the parties herein including any attached exhibits and/or depositions, as well as oral argument on January 18, 2022.

[3] According to the Declaration of Hal Burgan, General Counsel of National Railway Equipment, Co., "NRE received and accepted the payment under the policy number 18RTS9120 (the "policy") in the amount of $5,840,364.00 (the combined invoice value of the four Locomotives plus 10% of the combined invoice value, minus $200,00 deductible)." (Doc. 251-32).

[4] Attached to Mr. Burgan's Affidavit is the Release and Subrogation Agreement to various underwriters regarding Lloyds Policy No.: 18RTS9120 and the loss or damage to the [four] Locomotives that occurred on or about the 16th day of September 2018 (Doc. 251-32).

[5] On September 23, 2021, the deposition of Jay Smith, NRE Corporate Designee was taken. Various excerpts of the testimony are attached to different motions; however, the entirety of Mr. Smith's deposition was attached to PAL's motion for summary judgment (Doc. 243-1).

[6] According to Smith, any Class 1 railroad like CSX would not touch a locomotive for movement on their line without having an inspection in place (Tr. 25:7-9).

Smith testified that the waybills, numbered 539312 to 539315, were generated by him on September 7, 2018, which is the date memorialized on each waybill[7] (*Id.,* Tr. 39:20-22). As a "Special Instruction", the Waybills referenced Rule 11, which Smith indicated meant that everyone that touched the unit sends a freight bill (*Id.,* Tr. 41:23-24). In this case, as "Freight Charges" specifies, EVWR was to bill for transporting the locomotives from Mount Vernon, Illinois to Evansville, Indiana and CSX was to bill for transporting the locomotives from Evansville, Indiana to Port of Wilmington, N.C. (*Id., Tr. 42*).

EVWR picked up the locomotives, referenced as NREX 122, 123, 124 and 125 on the waybills, from the NRE yard in Mount Vernon, Illinois and transported them to Evansville, Indiana (Doc. 243-1). CSX took possession of NREX 122 – NREX 125, and was in the process of transporting them to the Port of Wilmington, N.C. when Hurricane Florence struck the area (*Id.*).

On September 16, 2018, CSX attempted to move the trains from McDowell, S.C. to Hamlet, N.C. (Doc. 131). At approximately 6:00 p.m., while going downgrade near Lilesville, N.C. in Anson County, the track was washed out (*Id.*). The engine did not make it across the washed-out section of track and the lead locomotive derailed (*Id.*). The four NRE locomotives in question also derailed resulting in significant damage, if not total loss.

---

[7] The waybills have been produced multiple times in this case. For clarity, the Court will cite to CSX's motion as it was the first on file, and note that they were filed as Exhibit D, which is the 4th Exhibit (Doc. 239-4).

## LEGAL STANDARD

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputes over unnecessary or irrelevant facts will not preclude summary judgment. *Id.* Further, a factual issue is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Id.* A court's role in summary judgment is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* at 249.

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990)).

This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.E.A., Inc. v. Shaver,* 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material

fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## APPLICABLE LAW

The Carmack Amendment was enacted in 1906 to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Reider v. Thompson,* 339 U.S. 113, 119 (1950); 28 U.S.C. § 11706. The Carmack Amendment addressed the liability of common carriers for goods lost or damaged during a railway shipment over which the Interstate Commerce Commission has jurisdiction. 28 U.S.C. § 11706. In other words, Carmack created a national scheme of carrier liability for goods damaged or lost during interstate shipment. *Kawasaki Kisen Keisha Ltd. v. Regal-Beloit Corp.,* 561 U.S. 89 (2010).

Carmack is premised on the view that the shipment has a single bill of lading and any damage during the journey is the responsibility of both the receiving and the delivering carrier. *Id.* at 108. When a rail carrier loses or injures the property it is carrying, the carrier is liable under Carmack for "the actual loss or injury to the property" for damage caused during the rail route under the bill of lading. 49 U.S.C.

§ 11706 (a)(1). As such, Carmack Amendment liability is rooted in strict liability. Thus, Carmack permits a shipper to recover for the actual damage or loss from either the delivering carrier or the receiving carrier regardless of which carrier caused the damage and regardless of whether the carrier actually issued a bill of lading. *Regal-Beloit,* 561 U.S. at 97.

## ANALYSIS

Although Lloyds is the plaintiff and CSX and EVWR are defendants, several of the issues in their respective motions for summary judgment overlap. This Court will go through the respective issues raised by each party and will attempt to clarify and distinguish the points argued.

### I.   Certain Underwriters at Lloyd's

Lloyds motion for summary judgment seeks judgment as a matter of law on the following issues: (A) As against CSX and EVWR, Lloyds establishment of their *prima facie* case, having demonstrated good order delivery of the subject locomotives and non-delivery by Defendants; (B) As against CSX, CSX has failed to and cannot establish that it was not negligent and further cannot establish its entitlement to any potential statutory defense(s) to strict liability; and, (C) As against CSX, CSX cannot establish its thirty-first affirmative defense (Doc. 251). CSX and EVWR filed a joint response and partial opposition to Lloyds motion, requesting that partial summary judgment be granted on Count 1 – Carmack Amendment Liability – of the second amended complaint, but then grant summary judgment as to CSX and EVWR with respect to limiting liability and denying all other claims as preemptive under the Carmack Amendment (Doc. 269).

### A. *Prima Facie* Case

Lloyds first argues that it has established a *prima facie* case under Carmack against CSX and EVWR (Doc. 251). Under the Carmack Amendment, a shipper must prove the following three elements to establish a *prima facie* case against a common carrier: (1) delivery of the goods to the carrier in good condition; (2) arrival of the goods in damaged condition at the final destination; and, (3) the amount of damage. *Missouri Pacific Railroad v. Elmore & Stahl,* 377 U.S. 134, 138 (1964); *S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 256 (7th Cir. 1982).

There is no doubt that a *prima facie* case has been established under the Carmack Amendment. First, the locomotives were in good condition when received by EVWR. In fact, CSX inspected the locomotives and NRE did not "tarp the units" and set them out at the gate for EVWR to pick up until after they had passed the inspection (Docs. 243-1, 251-7). Second, the locomotives derailed and were damaged such that they did not even arrive at the Port of Wilmington, N.C. (Doc. 131). Furthermore, photographic evidence depicts the resulting damage to the entire transport, including NREX 122 – NREX125 (Doc. 251-9) Third, Lloyds can prove damages; indeed, Lloyds paid $5,840,364.00[8] under its policy of insurance with NRE, policy number 18RTS91020, for the value of the four locomotives (Doc. 251-32).

The purpose of demonstrating delivery to the carrier in good condition and arrival in damaged condition is to show an adverse change in the condition of goods while they were in the carrier's custody which implies that whatever injury occurred

---

[8] The amount of $5,840,360.00 was the combined value of the four locomotives [NREX 122 - NREX 125] plus 10% of the combined invoice value, minus $200,000 deductible.

was caused by the carrier. *Camar Corp. v. Preston Trucking Co., Inc.,* 221 F.3d 271, 275 (1st Cir.2000) (*citing Missouri Pacific Railroad Co. v. Elmore & Stahl,* 377 U.S. 134, 138 (1964). Accordingly, carriers are subject to liability under the Carmack Amendment even if goods they were transporting never arrive at their final destination. *See Eddie Bauer, Inc. v. Focus Transp. Serv.,* 881 F.Supp. 1174, 1177–1181 (N.D.Ill.1995) (defendant carrier liable to plaintiff under the Carmack Amendment despite the fact that plaintiff's goods were stolen before final delivery).

Although CSX and EVWR disputed some of Lloyds factual assertions, they agreed that a *prima facie* case had been shown under Carmack (Doc. 269). Accordingly, summary judgment is appropriate as there is no genuine issue as to any material fact on this issue.

### B. CSX was Negligent and is Not Entitled to Statutory Defense

Lloyds next contention in their motion for summary judgment is that CSX has not and cannot establish that: (1) It was not negligent; and, (2) It is entitled to a statutory defense (Doc. 251). Once the shipper has established a *prima facie* case under Carmack, the carrier must demonstrate that it was not negligent and that the damage was caused by one of the following: (1) an act of God; (2) an act of the public enemy; (3) an act of the shipper (4) an act of the public authority; or, (5) the inherent nature or vice of the goods. *Missouri Pacific Railroad,* 377 U.S. at 137-138 (1964); *S.C. Johnson & Son, Inc.*, 695 F.2d at 256.

By its own admission, CSX does not dispute that there is no genuine issue of fact for trial on this issue (Doc. 269). In the response, CSX claims that an examination

into the issue of negligence is moot and unnecessary because neither CSX nor EVWR is invoking a Carmack statutory defense (*Id.*). CSX further claims that "the road to Carmack is paved" because both elements must be proven and CSX and EVWR are conceding the issue (*Id.*).

Although this Court accepts the rationale that both elements must be proven, this Court disagrees with its assertion that the negligence question is moot (Doc. 269). To the contrary, this Court articulated at the hearing held on January 18, 2022,

> "I'm persuaded that the CSX Railroad was at least negligent and is responsible for these engines ending up toppled during the storm."[9] (Tr. 4:11-13).

Indeed, the evidence is uncontroverted that Hurricane Florence was causing less than ideal weather in the Carolinas on September 15, 2018 and September 16, 2018 that included substantial rainfall, flash flooding and high winds. Indeed, both the CSX engineer, William Detreville, and the conductor, Matt Gambrell, testified about the weather that included torrential rains, excessive flooding and power outages in the area (Docs. 251-4 and 251-5). Notwithstanding the foregoing, CSX directed Detreville and Gambrell to proceed from Greenwood, S.C. to Hamlet, N.C. (*Id.*).

Nevertheless, because this is a two-part analysis, when one part is conceded, the analysis is complete. No questions of fact remain, therefore, it is uncontroverted that Lloyds has proven a *prima facie* case under Carmack and that CSX is not entitled to assert a statutory defense.

---

[9] The official court transcript has not yet been filed; however, the Court has received an advance copy.

### C. CSX Is Not Entitled to Benefit of Insurance

Lloyds final argument is that CSX cannot establish its thirty-first (31) affirmative defense (Doc. 251). In other words, Lloyds claims that CSX is not entitled to the benefit of any insurance related to the shipment in question or that Lloyds is not entitled to sue CSX or demand relief (*Id.*).

To the extent Lloyds is arguing that CSX is not a party to the insurance policy as issue, that is true. To the extent Lloyds is arguing that CSX did not effectively limit its liability, this Court conducts a full analysis *supra*.

## II. CSX Transportation, Inc. and Evansville Western Railway, Inc.

CSX and EVWR have contended from the beginning that this case is a Carmack case and they continue asserting that argument in their motions for summary judgment (Docs. 239, 242). It is important to note that EVWR filed a separate motion for summary judgment; however, their first argument is "That Summary Judgment Should Be Granted EVWR for Reasons Advanced by CSXT" (Doc. 242). As such, the following arguments involve both CSX and EVWR: (●) [Lloyds] claims for negligence and conversion are preempted by Carmack; (●) CSX limited its liability per the Carmack Amendment; (●) The economic loss doctrine bars the tort claims; (●) The conversion claim fails for lack of demand and refusal; and, (●) The second (non-delivery) and third (misdelivery) claims have no basis in law or fact (*Id.*, Doc. 242).The second argument advanced by EVWR will be analyzed separately with respect to only EVWR.

Lloyds filed responses in opposition to the motions filed by CSX and EVWR wherein it attempted to rebut each and every argument submitted by the two carriers

(Docs. 259 - 265). CSX filed a reply that reiterated its long-standing position that this case falls under the Carmack Amendment, all other claims must fail, and that damages is the only element remaining to be decided (Doc. 285).

### A. Preemption

Federal law preempts state and common law when Congress expressly provides that the federal law supplants state authority in a particular field, or when its intent to do so may be inferred from a pervasive system of regulation which does not leave a sufficient vacancy within which any state can act. *Shao v. Link Cargo (Taiwan), Ltd.,* 986 F.2d 700, 704 (4th Cir.1993). Preemption may also be inferred where state legislation would impede the purposes and objectives of legislation enacted by Congress. *Id.*

The United States' Supreme Court has long interpreted the Carmack Amendment as manifesting Congress' intent to create a national scheme of carrier liability for goods damaged or lost during interstate shipment. *Rice v. Sante Fe Elevator Corp.,* 331 U.S. 218, 230 (1947). Congress ensured the national uniformity of carrier liability in two ways: "by preempting state causes of action against carriers for damaged or lost goods; and by placing substantive limits on the rights of carriers to contract away liability." *REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.,* 519 F.3d 693, 695 (7th Cir. 2008).

The preemptive scope of the Carmack Amendment was addressed more than 100 years ago by the Supreme Court. In *Adams Express Company v. E.H. Croninger,* 226 U.S. 491 (1913), the Court stated that "almost every detail of the subject of the liability of a carrier is covered so completely by the Carmack Amendment that there

can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it." The Court went on to hold that to allow state regulations to affect the liability of carriers "would be to revert to the uncertainties and diversities of rulings which led to the amendment." *Id.* at 506. Indeed, the 'prime object' of the Carmack amendment was to 'bring about a uniform rule of responsibility as to interstate commerce and interstate commerce bills of lading' so that state law 'on that subject has been excluded.' *Atchison, Topeka & S.F. Ry. v. Harold*, 241 U.S. 371, 378, (1916). Several decades later the Supreme Court reiterated its holding on preemption when it noted, "[w]ith the enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss." *New York, New Haven & Hartford Railroad Co. v. Nothnagle,* 346 U.S. 128, 131 (1953).

Lloyds fourth claim for relief in the second amended complaint is one for negligence, gross negligence, and wilful or wanton conduct while the fifth claim for relief is conversion (Doc. 131). CSX (and EVWR by incorporation) first argue in its motion for summary judgment that Lloyds claims for negligence and conversion are preempted by the Carmack Amendment (Docs. 239, 242).

Although most state law claims are preempted by the Carmack Amendment, Lloyds argues that there is an applicable exception because CSX engaged in wrongful conduct which is separate and distinct from the loss of the shipment itself (Doc. 259). While courts have determined that carriers may be liable to shippers in tort for incidental harms associated with the loss or damage of cargo, *N. Am. Van Lines, Inc.,* 89 F.3d at 456; *Gordon v. United Van Lines, Inc.,* 130 F.3d 282, 284 (7th Cir. 1997),

that argument is not persuasive in this case because the exception is not widely accepted and is limited to cases where there are "allegations of injuries separate and apart from those resulting from the loss of shipped property". *Morris v. Covan World Wide Moving,* 144 F.3d 377 (5th Cir. 1998).

In the present case, with the exception of count VI against Paducah & Louisville Railway, Inc. that is not a subject of this motion, the damages all arise out of the loss of the same shipment that derailed. The Carmack Amendment preempts state law claims and provides the exclusive remedy against carriers for goods lost or damaged during an interstate shipment. *Id.* at 697-98; *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.,* 89 F.3d 452, 456 (7th Cir.1996). There is no separate and distinct injury; therefore state law claims for losses or damage to the cargo, whether described under a contract theory or a tort theory, are preempted by the Carmack Amendment. *Gordon v. United Van Lines, Inc.,* 130 F.3d 282, 289. Because Lloyds, the non-moving party, demonstrated *infra* the existence of a *prima facie* case, there is no question of fact that the claims for negligence, gross negligence, wilful or wanton conduct, and conversion are preempted by the Carmack Amendment.

### B. Limitation of Liability

Under the Carmack Amendment, the default rule is that carriers are strictly liable for the "actual loss or injury to the property caused by" the carrier. 49 U.S.C. § 11706 (a). Although Carmack intends to create a uniform system of carrier liability within the United States and thus "constrains carriers' ability to limit liability by contract," *Regal–Beloit*, 561 U.S. at 97, there is an exception to

this general rule, which allows a carrier to limit its liability "to a value established by written declaration of the shipper or by a written agreement between the shipper and the carrier." 49 U.S.C. § 11706(c)(3)(A).

CSX argues in its motion for summary judgment that it limited its liability per the Carmack Amendment to $10,000 per locomotive (Doc. 239) while EVWR argues that it limited its total liability to $ 100,000, or $25,000 per locomotive (Doc. 242). Lloyds vehemently argued to the contrary and asserted numerous reasons the attempt to limit liability was invalid and against the law, as well as arguing it was unenforceable (Doc. 259). This issue was also front and center at the motion hearing.

Prior to amendments in 1995, federal courts consistently held that to limit its liability under the Carmack Amendment, a carrier must: (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to [the shipper's] choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. *Hughes,* 829 F.2d at 1407. Since the enactment of the ICC Termination Act of 1995, the first prong has been altered since tariffs only need to be filed in certain circumstances; however, courts continue to adhere to the *Hughes* test to determine if a carrier has effectively limited its liability. *See, e.g., Emerson Elec. Supply Co. v. Estes Express Lines Corp.,* 451 F.3d 179, 186 (3d Cir. 2006); *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.,* 331 F.3d 834, 841–42 (11th Cir.2003). The Seventh Circuit still follows the modified *Hughes* test and holds that to limit liability, a carrier must (1) "obtain the shipper's agreement as to his choice of liability"; (2) "give the shipper a reasonable opportunity

to choose between the two or more levels of liability"; and (3) "issue a receipt or bill of lading prior to moving the shipment." *Nipponkoa Ins. Co. v. Atlas Van Lines, Inc.*, 687 F.3d 780, 782 (7th Cir. 2012) (quoting *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987)).

In a case cited (and argued) by Lloyds, CSX and EVWR, the Fourth Circuit points out what other circuits have determined – the Carmack Amendment's exception allowing for limited liability is "a very narrow exception to the general rule" imposing full liability on the carrier. *See ABB Inc. v. CSX Transp., Inc.,* 721 F.3d 135 (4th Cir. 2013). Indeed, "[c]ourts will carefully scrutinize any alleged limitation of liability to assure that the shipper was given a meaningful choice and exercised it as evidenced by a writing." *Id.*

Although the District Court for the Eastern District of North Carolina limited CSX's liability pursuant to the bill of lading, the Fourth Circuit reversed and held that the liability was not limited. *Id.* While this decision is not binding to this Court, nonetheless, the ABB case is very persuasive. *ABB,* 721 F.3d at 135.

In *ABB,* ABB alleged that CSX was liable under Carmack for actual loss or injury to a transformer worth approximately $1.3 million that was damaged in transit from the ABB plant in St. Louis to Pittsburgh, PA. *Id.* CSX denied liability and raised the affirmative defense that its liability was limited because the bill of lading was prepared by ABB and because it incorporated by reference a liability limitation contained in a separate price list used by CSX. *Id.*

The appellate court took umbrage with the district court awarding summary judgment on the liability limitation before first considering whether ABB had

established a *prima facie* case. *Id*. The appellate court also disagreed with the district court determining that Carmack did not apply because ABB drafted the bill of lading. *Id*. Instead, the appeals court looked to the documents at issue, the bill of lading and CSX price list, before making any determinations. *Id*.

It is true that ABB prepared the bill of lading; however, the text of Carmack imposes full liability on carriers without regard to which party prepared the bill of lading. *Id*. Indeed, a carrier's failure to issue a bill of lading "does not affect the liability of a rail carrier". 49 U.S.C. § 11709(a). As for the price list, ABB conceded receiving it from CSX, but the Court emphasized that the Carmack Amendment imposed the burden of securing limited liability on the carrier and not the shipper.49 U.S.C. § 11706. It is important to note that the *ABB* Court did not hold the shipper to a heightened standard of knowledge based on the drafting of the bill of lading or based on prior conduct with the carrier; instead the denial of the liability of limitation was because the specific price code with limiting language, "Price List 4605", was not specifically referenced in the BOL. *Id*.

The *ABB* Court agreed with the Eleventh Circuit's holding that by including a specific class designation in the bill of lading, the shipper was bound to the terms and conditions associated with the class designation. *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.,* 970 F.2d 609, 612 (11th Cir. 1992). However, that was not the case in *ABB*, where the bill of lading was silent as to rate or classification, or even price list designation. *ABB,* 721 F.3d at 135.

Applying the *ABB* facts to this case leads to different outcomes regarding limitations of liability as articulated by CSX and EVWR. In this case, NRE prepared

the waybills, which the parties testified are the same thing as bills of lading and the terms are interchangeable. As we have seen, the mere fact that NRE prepared the waybills does not negate Carmack liability nor does it impute knowledge that is not expressly referenced within said waybills, regardless of testimony taken approximately three (3) years after the occurrence.

During argument, counsel for CSX and EVWR referenced a STCC code, or Standard Transportation Commodity Code, that they claimed contained the price and pricing terms for the shipment at issue. In this case, near the bottom, left of each waybill is "STCC: 3741110". Evansville Western Railway, Inc.'s pricing sheet, EVWR 5012-11, references STCC 3741110, and also indicates a limitation of liability of $25,000 per unit (Doc. 239-6). That same STCC code is not referenced anywhere in the CSX pricing sheets, 6051, that claim the limitation of liability is $10,000 (Doc. 239-5).

In accordance with the rationale of both the Fourth and Eleventh Circuits, this Court finds that there are no questions of fact that EVWR has met its burden in limiting its liability. Specifically, the waybills contained a specific class designation in the bill of lading, *i.e.* STCC 3741110, which is also referenced in the EVWR pricing sheet, *i.e.,* 5012-11. *See ABB Inc. v. CSX Transportation, Inc.,* 721 F.3d 135 *(2013); Aircraft Co. v. N. Am. Van Lines, Inc.,* 970 F.2d 609, 612 (11th Cir. 1992). The same cannot be said for CSX.

Applying these same facts to the Seventh Circuit test results in the same outcome. The waybills were prepared by Jay Smith at NRE on the EVWR portion of PALConnect prior to shipment. Smith filled out the waybills and Smith input "STCC:

3741110" on the waybills, effectively agreeing to the limitation contained within the EVWR price list that offered additional levels of liability. To the contrary, there remain genuine issues as to material facts regarding whether CSX perfected its limitation of liability. Therefore, summary judgment on this issue is appropriate with respect to EVWR, but not as to CSX.

### C. Economic Loss Doctrine

CSX (and EVWR) next claim that the tort claims of negligence and conversion are not viable under the economic loss doctrine (Docs. 239, 242). Lloyds counters that this fact pattern falls into one of the numerous exceptions to the general rule, but this Court disagrees (Doc. 259).

North Carolina's economic loss doctrine provides that a breach of contract does not ordinarily "give rise to a tort action by the promisee against the promisor." *Ellis v. La.–Pac. Corp.,* 699 F.3d 778, 783 (4th Cir.2012) (quoting *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.,* 294 N.C. 73, 240 S.E.2d 345, 350 (1978)). More specifically, it "prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk." *Kelly v. Ga.–Pac. LLC,* 671 F.Supp.2d 785, 791 (E.D.N.C.2009).

While Lloyds is correct that there are exceptions to the economic loss doctrine, the argument fails just as it does with preemption. This case is governed by the Carmack Amendment and the Carmack Amendment controls. As set forth *infra,* Congress enacted to Carmack Amendment to provide the exclusive remedy to actual loss or damages caused in shipment in interstate commerce.

Lloyds has demonstrated a *prima facie* case that Carmack applies and that CSX has not and cannot assert a statutory defense to avoid Carmack liability. Therefore, the Court considers this argument moot as the claims of negligence and conversion law are preempted.

### D. Conversion – Demand and Refusal

CSX and EVWR argue the Lloyds claim for conversion also fails because Lloyds failed to make a demand for return of the locomotives and CSX never refused to return them (Doc. 239). Lloyds counters that "demand and refusal" are not necessary for claim of true conversion (Doc. 259). As with the economic loss doctrine, this issue is moot as the Court has already determined that this is a Carmack case and that preemption applies.

The North Carolina Supreme Court has held that "the tort of conversion is well defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattel belong to another, to the alteration of their condition or the exclusion of an owner's rights". *Variety Wholesalers, Inc. v. Salem Logistics Traffic Services, LLC,* 265 N.C. 520 (2012) citing *Peed v. Burleson's, inc.,* 244 N.C. 437, 439 (1956). Furthermore, there are two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession, or conversion by the defendant. *See Gadson v. Toney,* 69 N.C.App. 244, 246 (1984).

While the question as to conversion is generally a question of fact for the jury, under the Carmack Amendment there is no genuine issue as to any material fact due to the preemption of any potential conversion claim. As such, summary judgment is warranted.

### E.  Bill of Lading

The final argument raised in the summary judgment motion filed by CSX, but also asserted by EVWR, is against the two claims brought under the Federal Bill of Lading Act, otherwise known as the Pomerene Act (Doc. 139). Specifically, CSX argues that the second claim for non-delivery and the third claim for misdelivery are inapplicable in this case (*Id*). Lloyds counters that both claims are viable (Doc. 259).

49 U.S.C.A. § 80102 is entitled, "Application" and states in pertinent part,

"This chapter applies to a bill of lading when the bill is issued by a common carrier for the transportation of goods –
(3) between a place in a State and a place in another State;"

Nevertheless, when one looks to the liability imposed, it is clear the terms of the Carmack Amendment and Federal Bill of Lading Act are superfluous. Under the Carmack Amendment, Lloyds is entitled to liability for "actual loss or injury" to the locomotives, while under the Federal Bill of Lading, a common carrier is liable for damages to a person having title to, or right to possession of goods. 49 U.S.C. § 80111 (a). Because there can be no double recovery for the same loss and there is no question of fact that a *prima facie* claim has been stated under Carmack, with its extensive preemptive scope, summary judgment is appropriate with respect to this issue.

### I.     Evansville Western Railway, Inc.

In addition to incorporating the arguments raised by CSX in its motion for summary judgment, EVWR also asserts that Lloyds tort claims fail as to EVWR for lack of facts, evidence, or even a theory of relief (Doc. 242). Again, the preemptive scope of the Carmack Amendment has been exhausted. Congress made its intention clear. The Carmack Amendment was enacted to "relieve shippers of the burden of

searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods. *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.,* 695 F.2d 253, 256 (7th Cir. 1982) (quoting *Reider v. Thompson,* 339 U.S. 113, 119 (1950).

As demonstrate *infra*, although a *prima facie* case exists under the Carmack Amendment which creates a "presumption of negligence", *Jos. Schlitz Brewing Co. v. Transcon Lines,* 757 F.2d 171, 174 (7th Cir.1985), EVWR disavowed "any of the statutory defenses", thus "paving the road" for Carmack recovery (Doc. 269, p. 2). Notwithstanding the applicability of strict liability, EVWR cannot be held to owe more than its $100,000 limitation of liability. Indeed, there are no questions of fact on that issue in that EVWR had provided its pricing list to NRE, NRE chose to send the locomotives via EVWR even with the liability limitation, NRE could have sought additional coverage from EVWR, and NRE issued the Waybill with the knowledge of the ST code that was contained on EVWR's price sheet.

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part the Motions for Summary Judgment filed by Certain Underwriters at Lloyd's and CSX Transportation, Inc.. The Court further GRANTS the entirety of the Motion for Summary Judgment filed by Evansville Western Railway, Inc. Specifically, the Court enters summary judgment as to the following:

I.  Certain Underwriters at Lloyd's:

(1) That Lloyds has established a *prima facie* case under Carmack against CSX and EVWR; and,

(2) That Lloyds has shown that CSX has not and cannot establish that strict liability should not be imposed.

II.   CSX Transportation, Inc.:

(1) That Lloyds claims for negligence and conversion are preempted by Carmack; and

(2) That the claims under the Bill of Lading Act are redundant and not viable;

III.   Evansville Western Railway, Inc.:

(1) That Lloyds claims for negligence and conversion are preempted by Carmack;

(2) That the claims under the Bill of Lading Act are redundant and not viable; and,

(3) That EVWR successfully limited its liability.

Accordingly, Lloyds may proceed to trial on its first claim for relief, liability pursuant to the Carmack Amendment. CSX does not contest that a *prima facie* case has been established nor does it raise a statutory defense to negate strict liability. In other words, there remains a question of fact as to the amount recoverable by Lloyds and whether CSX perfected its limitation of liability.

**IT IS SO ORDERED.**

**DATED:**   <u>**February 11, 2022**</u>

<u>/s/ Stephen P. McGlynn</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**