IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CERTAIN UNDERWRITERS AT
LLOYD'S,

     Plaintiffs,

v.

CSX TRANSPORTATION, INC., and
EVANSVILLE WESTERN
RAILWAY, INC.

     Defendants.

Case No. 20-cv-0795-SPM

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Renewed Motion for Judgment as a Matter of Law filed by plaintiff Certain Underwriters at Lloyds ("Lloyds") pursuant to Rule 50 of the Federal Rules of Civil Procedure (Doc. 400). For the reasons set forth below, the Court DENIES the motion.

## RELEVANT FACTUAL BACKGROUND

On October 17, 2022, a jury trial commenced between Lloyds and defendant CSX Transportation, Inc. ("CSX")[1]. On February 11, 2022, the Court ruled on the respective dispositive motions and narrowed the pending issues (Doc. 300). Specifically, this Court held that Lloyds had established a *prima facie* case under the

---

[1] This case also identified Evansville Western Railway, Inc. ("EVWR") as a party-defendant; however, on February 11, 2022, this Court granted Summary Judgment to EVWR and held that EVWR limited its liability in the amount of $100,000 total, or $25,000 per locomotive (Doc. 300). Additionally, prior to the commencement of the trial, the Court entered an Order that indicated that Lloyd's claims as to CSX and EVWR were severed and that the trial pertained to CSX (Doc. 378). Accordingly, although the Response in Opposition was purportedly filed by CSX and EVWR, this Court strikes any reference to EVWR.

Carmack Amendment, but there remained the questions as to the amount recoverable under Carmack by Lloyds and whether CSX perfected its asserted limitation of liability (Doc. 300). On October 11, 2022, this Court further advised that it had reviewed the proposed jury instructions that had been submitted by the parties and determined that the Issues Instruction shall read as follows: "Defendant contends that it has limited its liability consistent with the Carmack Amendment. To succeed on this position, defendant must prove the following four elements by a preponderance of the evidence: (1) That the carrier provided the shipper, upon request, a copy of its rate schedule; (2) That the carrier gave the shipper a reasonable opportunity to choose between two or more levels of liability; (3) That the carrier obtained the shippers agreement as to the shippers choice of liability; and, (4) That a bill of lading was issued prior to moving the shipment that reflects the agreement. (Doc. 375). Of note, this version had been submitted and requested by Lloyds.

This action was initially filed on February 14, 2019 in the Western District of North Carolina (Doc. 1), but was subsequently transferred to this Court on August 18, 2020 (Doc. 58). This case asserted several theories of liability and sought recovery for the loss of four locomotives that derailed on September 14, 2018 during Hurricane Florence in or near Lilesville, North Carolina (Doc. 1). The locomotives were newly refurbished by National Railway Equipment Co. ("NRE") in Mt. Vernon, Illinois and were in the process of being delivered to the Port of Wilmington when the derailment occurred. NRE was insured through Certain Underwriters at Lloyd's and received payment under their policy of insurance.

On October 21, 2022, at the close of evidence, Lloyds moved for a directed

verdict, which was ultimately denied (Doc. 398). The parties then presented closing arguments before the case was submitted to the jury with the agreed upon instructions. Less than ninety (90) minutes later, following the five-day trial, a jury found that CSX proved that it had limited its liability to National Railway Equipment Co. ("NRE") and awarded $40,000 total ($10,000 per locomotive) to plaintiff Certain Underwriters at Lloyds ("Lloyds").

## LEGAL STANDARD

Rule 50 of the Federal Rules of Civil Procedure "allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Passananti v. Cook County,* 689 F.3d 655, 659 (7th Cir. 2012) (citing Fed.R.Civ.P. 50(a)). "In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Id.* In so doing, the court does not weigh the evidence or make credibility determinations. *Tart v. Illinois Power Co.,* 366 F.3d 461, 478 (7th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000)). Furthermore, while the court reviews the entire record, "it must disregard all evidence favorable to the moving party that the jury [was] not required to believe." *Reeves,* 530 U.S. at 151.

"Overturning a jury verdict is not something that [a court] do[es] lightly." *Massey v. Blue Cross–Blue Shield of Ill.,* 226 F.3d 922, 925 (7th Cir. 2000). A court will do so only if "the moving party can show that no rational jury could have brought

in a verdict against it." *Hossack v. Floor Covering Assoc. of Joliet, Inc.,* 492 F.3d 853, 859 (7th Cir. 2007) (internal citations and quotations omitted).

## ANALYSIS

The jury in this case was entrusted with the role of weighing the evidence, making credibility determinations, and drawing reasonable inferences from the facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). As such, the jury was responsible for determining whether CSX proved by a preponderance of the evidence, the four (4) elements to establish a limit of liability. Going through each of the elements, this Court does not find any reason to disturb the jury's determination in favor of CSX and against Lloyds. The evidence allowed a jury to rationally conclude that CSX limited its liability consistent with the Carmack Amendment.

### 1. Rate Schedule

The first element states, "That the carrier provided the shipper, upon request, a copy of its rate schedule." Although Lloyds contends that CSX only established they provided NRE with a copy of its rate schedule 5 days after the derailment, Lloyds concedes that NRE had constructive notice of the limitation before the shipment commenced (Doc. 400, p. 2, FN1). As such, Lloyds does not expressly dispute this element.

Notwithstanding the reluctant concession, this Court deems there was reliable and sufficient evidence for the jury to find, by a preponderance of the evidence, that NRE was aware of the rate schedule. Jay Smith, the prior Corporate Logistics Manager for NRE testified that he handled the domestic shipments for NRE from

2005 to 2019, including the shipment at issue[2] (Doc. 384, pp. 106-107). Smith

testified that was familiar with the CSX price list and that he used the public rate

that incorporated the limitation of liability language (Doc. 300, p. 115). He further

testified that in his position, he contracted with CSX 30 to 40 times per year for 17

years and never requested a different rate (Doc. 384, p. 198). He also testified that he

understood if he wanted higher coverage from CSX, he would have to pay a higher

shipping rates (Doc. 384, p. 198 – 199).

### 2. Reasonable Opportunity to Choose

The second element of the issues instruction states, "That the carrier gave the

shipper a reasonable opportunity to choose between two or more levels of liability".

Lloyds alleges that CSX failed to establish this issue and points to a New York case

to support its contention that CSX was required to offer full coverage under Carmack

for the limitation of liability to apply (Doc. 400, p. 3); see *Chartis Seguros Mexico S.A.*

*de C.V. v. HLI Rail & Rigging, LLC,* 3 F.Supp.3d 178-179 (S.D.N.Y. 2014). CSX

counters that there is no such requirement under Carmack (Doc. 402). Indeed, this

Court is constrained to note that there is no such language in the statute, that Lloyd's

prepared the jury instruction, and that the *Chartis Seguros* decision is not binding

precedent.

Although Lloyds raises a CSX price list from 1999 to show that it previously

contained full Carmack quotes "side-by-side" with a limited liability quote, that

argument is not persuasive nor is it a requirement of what must be done. Business

---

[2] Jay Smith's Trial Testimony is contained in Transcript of Jury Trial – Volume III. The transcript
has been p. 115)filed with the Court as Document 300, and Mr. Smith's testimony encompasses pages
106 to 216 of said Document.

practices have evolved over 20 years. The Claims Limitation was admitted into evidence and was shown to the jury. The language stated,

> "CSXT understands that you have requested our lowest rate, not a full liability rate offered under the Carmack Amendment. This rate is offered in connection with a limitation of carrier liability for damages to the commodity transported of [$10,000.00]. If full liability under the Carmack Amendment is desired, please contact your CSXT sales representative to receive a specific rate quote with Carmack Amendment protections."

Based upon the evidence, including the testimony of Jay Smith, who chose the public rate although he was aware he could request a higher rate for more coverage, a rational jury could have found the shipper, NRE, was given a reasonable opportunity to choose between the public rate that limited liability and a rate that would cover the damage to the locomotives.

### 3.   Shipper's Agreement

The third element of the issues instruction states, "That the carrier obtained the shippers agreement as to the shippers choice of liability." Lloyds contended that CSX did not provide evidence *via a writing* that the shipper consented to the liability limitation (Doc. 400, p. 11). In support of this argument, Lloyds points to an STB letter issued in response to a question posed by a judge in the Second Circuit, to wit: *Mitsui Sumitomo Ins. Co. v. Evergreen Marine Corp.,* 621 F.3d 215 (2nd Cir. 2010).

The approved jury instruction does not specify that the agreement must be in writing and this Court is not going to add an additional requirement that was not before the jury when they decided the case. Jay Smith testified that he was aware of the liability limitation and that he accepted it. Hal Burgen, General Counsel for NRE, further indicated in an email to Cyndee Garbrecht, Lloyds representative, that

"[e]ach time we ship with CSX, we accept their terms and conditions." Based upon the evidence submitted at trial, the jury reasonably concluded that CSX proved by a preponderance of the evidence that it obtained NRE's agreement as to choice of liability.

### 4. Bill of Lading

The fourth element of the issues instruction states, "That a bill of lading was issued prior to moving the shipment that reflects the agreement." Lloyds claims that CSX failed to establish this element (Doc. 400, p. 14). Specifically, Lloyds contends that CSX could not point out where the limitation was included on the bill of lading; however, that is not the plain language of step 4. Indeed, there was one jury instruction with 4 separate elements.

Through testimony, CSX established that NRE prepared the bills of lading online, applying the limitation of liability rate. The bill of lading only needed to reflect the agreement, and the jury reasonably inferred via the exhibits and other testimony that it did so.

In closing, it was for the jury to assess the evidence and the credibility of the witnesses who testified about the events at issue. The fact that Lloyds disagrees with the credibility determinations of the jury provides no basis for disturbing the verdict. The totality of the evidence was sufficient to permit the jury to conclude that CSX limited its liability consistent with the Carmack Amendment, and proved by a preponderance of the evidence that:  (1) That the carrier provided the shipper, upon request, a copy of its rate schedule; (2) That the carrier gave the shipper a reasonable opportunity to choose between two or more levels of liability; (3) That the carrier

obtained the shippers agreement as to the shippers choice of liability; and, (4) That a bill of lading was issued prior to moving the shipment that reflects the agreement.  This Court will overturn a verdict only if "no rational jury" could have reached the result it did, and this Court sees no sound basis upon which to disturb the jury's decision.

## CONCLUSION

For the reasons set forth above, the Court denies plaintiff Certain Underwriters at Lloyds Rule 50(b) Motion for Judgment as a Matter of Law. Clerk to enter judgment according to jury verdict.

**IT IS SO ORDERED.**

**DATED:   February 21, 2023**

/s/ Stephen P. McGlynn
**STEPHEN P. McGLYNN**
**U.S. District Judge**